COMMONWEALTH *vs.* ROGER D. FRANCIS.

Plymouth.    October 7, 1968. — January 2, 1969.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, SPIEGEL, &
REARDON, JJ.

*Homicide. Insanity. Evidence,* Opinion: expert; Of insanity. *Jury
and Jurors. Constitutional Law,* Trial by jury.

Evidence in a murder case warranted conclusions that the defendant
shot a girl, left her, mortally wounded, on a highway, and fled to
Canada, that he was criminally responsible mentally, and that he
was guilty of murder in the first degree.  [109–110]

On the record in a murder case, including lengthy testimony by the de-
fendant, it could not be said that the opinions of the medical witnesses
were unanimous that the defendant lacked criminal responsibility by
reason of mental disease or defect or that a new trial was required
after a verdict of guilty, although the two medical witnesses for the
defendant testified that he was thus lacking in criminal responsibility
and the medical witness for the Commonwealth, after testifying on
direct examination that the defendant did have criminal responsi-
bility mentally, contradicted himself on cross-examination [110–111];
WHITTEMORE and CUTTER, JJ., dissenting.

No constitutional right of the defendant in a murder case appeared to
have been violated by excluding from the jury persons opposed to
capital punishment where, upon recommendation of the jury, the
death penalty was not imposed after a verdict of guilty of murder in
the first degree.  [111]

INDICTMENT found and returned on May 11, 1967.

The case was tried in the Superior Court before *Sgarzi,* J.

*Alfred E. Nugent* for the defendant.

*John Clark Wheatley,* Assistant District Attorney, for the
Commonwealth.

REARDON, J.    This is an appeal under G. L. c. 278,
§§ 33A–33G.  The defendant was tried before a jury on
an indictment charging him with murder and was convicted
of murder in the first degree.  The jury recommended that
the death sentence be not imposed and the defendant was
sentenced to life imprisonment.

The defendant alleged various assignments of error but

has pressed only two of those before us. He further contends that the court erred in excluding from the jury persons who said they were opposed to capital punishment.

1. The defendant first asserts that there was error in denying at the close of the Commonwealth's case his motion for a directed verdict on the basis that the Commonwealth failed to introduce sufficient evidence to warrant the jury in returning a verdict of guilty. The Commonwealth had introduced evidence that the defendant had been with the deceased on March 11, 1967; that she was last seen in his company before she was found by a State trooper, alive but unconscious, at 6 A.M. on March 12, 1967, on a median strip dividing Route 3 in Hingham; that there were tire marks leading to the median strip where her body was discovered; that the automobile which the defendant had been driving was found abandoned in Canada containing stains of a type of blood matching that of the deceased; and that the same gun had fired both the bullets found in the deceased's body and those, fragments of which were found in the defendant's car. There was further evidence of the defendant's flight to Canada and his statements to police from Hingham who arrived to return him. To them he said on March 20, 1967, "I've been expecting you fellows." After being shown a warrant he asked if the deceased were still alive and was informed she had died the day before. He thereupon inquired, "Will I get the chair for first degree?" The Hingham police chief responded he "didn't know." These circumstances taken together are of "a conclusive nature and tendency, leading on the whole to a satisfactory conclusion, and producing in effect a reasonable and moral certainty, that the accused, and no one else, committed the offence charged." *Commonwealth* v. *Webster*, 5 Cush. 295, 319. *Commonwealth* v. *Russ*, 232 Mass. 58, 68. *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400. *Commonwealth* v. *Shea*, 324 Mass. 710, 713. In employing in review this time tested rule we cannot say that the facts in evidence might not reasonably impel a jury to find them incompatible with the innocence of the defendant and not in

Commonwealth *v.* Francis.

accord with any other theory than his guilt. There was no error in the denial of the motion.

2. The defendant argues that there was error in the denial of his motion for a new trial which was based on the nature and effect of testimony given by three doctors on the question of the defendant's sanity. Two were called by the defence and testified that the defendant was suffering from a mental disease or defect which deprived him of substantial capacity to appreciate the wrongfulness of his act or to conform his conduct to the requirements of law at the time of the crime. A third medical witness called by the prosecution testified to the contrary on direct examination. The defendant contends that upon cross-examination this witness changed his testimony and so contradicted the testimony he gave relative to the defendant's capacity on direct examination as to agree with the opinions expressed by the two medical witnesses whom the defendant called. The defendant urges upon us therefore that "there was unanimous medical opinion that the Defendant was not criminally responsible." Our reading of the evidence does not lead us to conclude that there was such a unanimity. However, the issue which has been raised can be properly framed as follows: If two defence experts testify to a defendant's mental incapacity and a prosecution expert states on direct examination that the defendant has met the tests of substantial capacity defined in *Commonwealth* v. *McHoul*, 352 Mass. 544, but later contradicts himself on cross-examination, is a verdict finding the defendant criminally culpable permissible? The transcript discloses extensive direct and cross-examination of the three doctors and it would appear that the jury had before them for consideration full and complete information on the varied aspects of that type of mental disease with which the defendant was allegedly afflicted. There was testimony that the affliction could wax and wane in severity. The jury had further opportunity to make up their minds on this defence of insanity by virtue of the lengthy testimony of the defendant himself, during which he gave a most complete story of his

movements and motives prior to the killing of the deceased. When expert testimony conflicts on the matter of sanity the decision is to be left to the jury. *Commonwealth* v. *DeSalvo,* 353 Mass. 476, 483. *Commonwealth* v. *Clark,* 292 Mass. 409. *Commonwealth* v. *Clark,* at page 415, stated that in assessing a defendant's mental responsibility for crime the jury should weigh "the fact that a great majority of men are sane, and the probability that any particular man is sane." Yet this assessment is to be made in each case in the light of the evidence introduced. Hence, whereas in this instance the evidence provides no strong indication of that provocation or stimulus to commit murder sufficient to impel a normal person to take life (such as jealousy, hatred, greed, envy, frustration of aroused sexual desire or the like), and expert testimony is offered that one afflicted with mental illness may engage in a murderous act from which a mentally normal person would refrain, it is for the jury to determine on all the evidence whether what was done was itself evidence of insanity at the time of the act. In various aspects this case is quite different from the fact situation obtaining in *Commonwealth* v. *Cox,* 327 Mass. 609. Here the jury had much before them on the activity of the defendant before and after the crime, as well as the opportunity to see and hear him on the stand. Indeed, both the interrogation of the experts and the charge by the judge, in addition to the jury's ability to see, hear and weigh what came before them, provided, under *Commonwealth* v. *McHoul,* 352 Mass. 544, a good example of how the issue of sanity may now be properly tried. The defendant's motion was properly denied.

3. The defendant has raised the question of possible error in excluding from the jury persons who said they were opposed to capital punishment. However, this case does not come within the constitutional rule of *Witherspoon* v. *Illinois,* 391 U. S. 510, because the death penalty was not imposed. *Bumper* v. *North Carolina,* 391 U. S. 543, 545. *Commonwealth* v. *Nassar,* 354 Mass. 249, 257. *Commonwealth* v. *Sullivan,* 354 Mass. 598, 608–609.

4. Our review of this case discloses no error, and we are of opinion that justice does not require a new trial.

*Judgment affirmed.*

WHITTEMORE, J. and CUTTER, J. (dissenting). As we read the transcript, the expert for the Commonwealth gave his only adequately informed opinion on cross-examination. He then agreed with the two experts called by the defendant that the defendant was affected with paranoid schizophrenia and lacked substantial capacity to conform his conduct to the requirements of law. In all the circumstances we would order a new trial under G. L. c. 278, § 33E, as amended. These include the risk of the jury misunderstanding some of the expert medical opinion, the extended medical history of the defendant's disease (a 1963 report stated that he was "potentially homicidal"), and, in the light of the history, the evidential significance of the dreadful killing itself as an act inexplicable if tested by normal conduct.