COMMONWEALTH *vs*. MICHAEL G. LALIBERTY.

Worcester.    April 5, 1977. — August 26, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Insanity. Homicide. Practice, Criminal,* Exceptions: failure to save exception; Capital case; Charge to jury. *Evidence,* Photograph, Of sanity.

At the trial of indictments for the murders in the first degree of a husband and wife, black and white photographs of the victims were properly admitted in evidence. [239]

At a murder trial in which insanity was a defense, a ruling striking the answer of a qualified psychiatrist for the defendant as to the witness's understanding of the decision in *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967), was correct, and was not prejudicial, where the answer was not responsive in all aspects and the witness was given a chance "to restate" his answer. [240]

At a murder trial, where a psychiatrist for the defendant testified that in his opinion the defendant had not had a mental disease or defect on the night of the killings, the judge properly sustained an objection to a further question concerning the defendant's ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. [240-241]

In a criminal case, the opinion of an expert for the defendant as to his mental condition at the time of the crime must be stated only in accordance with the standard of the *McHoul* case; however, the expert may testify as to his diagnosis even if in his opinion the defendant was not suffering from a "mental disease or defect." [242-244]

An argument on appeal from convictions in criminal cases that the trial judge should have charged the jury pursuant to an "insanity defense" was lacking in merit where the defendant did not request an instruction on the question of his sanity or object to the judge's charge. [244-247]

Upon an assessment pursuant to G. L. c. 278, § 33E, of the entire record of convictions of the defendant of murder in the first degree of a

husband and wife, and the imposition of consecutive life sentences, this court concluded that substantial justice did not require a new trial at which the defendant's criminal responsibility would be submitted to the jury where it appeared that, although the evidence was sufficient to raise a question of the defendant's responsibility, he not only did not request an instruction thereon but avoided the point and claimed someone else committed the crimes, and that the only expert testimony was from the defendant's psychiatrist and indicated that the defendant was not suffering from a mental disease or defect at the time of the killings. [247-248]

INDICTMENTS found and returned in the Superior Court on November 13, 1976.

The cases were tried before *Dimond, J.*

*Robert B. Shumway* for the defendant.

*James P. Donohue,* Assistant District Attorney (*Edward P. Ryan, Jr.,* Special Assistant District Attorney, with him) for the Commonwealth.

WILKINS, J.   We affirm the defendant's convictions of murder in the first degree of Frank C. Dickinson and Bertha L. Dickinson. The victims, husband and wife and each over eighty years old, were brutally murdered on the night of September 8, 1975, in their home in Auburn. The defendant was sentenced to consecutive life sentences.

The defendant argues that the judge should have excluded from evidence black and white photographs of the victims. The photographs were relevant to the question of extreme atrocity and cruelty, and their admission was within the judge's discretion. *Commonwealth* v. *Bys,* 370 Mass. 350, 358-361 (1976). He gave cautionary instructions to the jury concerning the photographs on more than one occasion. There were no extraordinary circumstances making the admission of the photographs improper. See *Commonwealth* v. *Richmond,* 371 Mass. 563, 564-565 (1976).

The only other exceptions argued by the defendant relate to the exclusion of testimony he offered from a psychiatrist in support of a claim of insanity. As will be seen, the judge's rulings were correct. The defendant makes further arguments as to which no exceptions were claimed.

We consider all the defendant's arguments in the context of our obligation under G. L. c. 278, § 33E, to review the whole case to determine whether justice requires a new trial or a reduction in the verdicts. Our consideration of arguments not based on exceptions is restricted, however, to a determination whether there was a miscarriage of justice. See *Commonwealth* v. *Williams,* 364 Mass. 145, 150-151 (1973).

The defendant offered the testimony of a qualified psychiatrist, Dr. Malcolm R. Sills. Dr. Sills saw the defendant on three occasions for a total of approximately six hours and prepared a report. He concluded that the defendant's thinking was "concrete and dull," that he was unable to think in terms of abstractions, that his affect tended to be overcontrolled, and that he had no attachment to members of his family and had no real friends. Dr. Sills concluded that the defendant "was not retarded but that he was either dull normal or borderline" between dull normal and retarded. He described what the defendant told him about his past, the incidents of September 8, 1975, and two occasions where the defendant was "amnesic." Dr. Sills gave his general impressions of the defendant. He indicated his awareness of the opinion of this court in *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967). He was asked his understanding of the *McHoul* decision and responded as set forth in the margin.[1] The answer was struck on motion of the Commonwealth. The judge said, "[W]e will give the doctor a chance to restate it." The defendant excepted to the judge's ruling. The ruling was correct because the answer was not responsive in all aspects. The ruling was not prejudicial because the defendant was not foreclosed from pursuing the line of questioning.

After another question was excluded, the judge suggested to defense counsel that he might ask "the appropri-

---

[1] Dr. Sills said: "This breaks down into three things. First, as a result of mental disease or defect, lacking substantial capacity; second, to appreciate criminality of conduct and, third, to conform conduct to the law. I know that's all one sentence, but to be perfectly honest with you, I cannot grasp it unless I break it down to those three thoughts."

ate question using the McHoul standards as the subject matter of your questions." The attempt to direct the inquiry in terms of the principles laid down in the *McHoul* case was appropriate. *Commonwealth* v. *Martin,* 357 Mass. 190, 193 (1970). It is clear that defense counsel was well aware of the *McHoul* case but was reluctant to follow the form of questions indicated in that opinion. In particular, for a reason which soon became apparent, he seemed reluctant to ask Dr. Sills whether the defendant had a mental disease or defect on the night of the killings. The judge indicated that, before going to other matters of opinion under the *McHoul* standard, the defense must ascertain whether in Dr. Sills's opinion the defendant had a mental disease or defect on the night of the killings: "Take it one step at a time." When he was asked whether the defendant had had a mental disease or defect on the night of the killings, Dr. Sills answered that in his opinion the defendant did not. The judge sustained an objection to a further question concerning the defendant's ability to appreciate the criminality of his conduct or his ability to conform his conduct to the requirements of law. The defendant excepted to that ruling. The ruling, however, was entirely consistent with the *McHoul* standards. Criminal conduct is excusable in this Commonwealth on the ground of insanity only where the defendant's capacity to appreciate the criminality of his action or his capacity to conform his conduct to the requirements of law was substantially impaired as a result of a mental disease or defect. We see no reason at this time to depart from the standards expressed in the *McHoul* case. If an expert witness for a defendant concludes that the defendant was not suffering from a mental disease or defect at the time of the defendant's alleged criminal conduct, that expert witness need not be permitted to testify concerning the defendant's ability to appreciate the criminality of his conduct or his ability to conform his conduct to the requirements of the law.

After a bench conference, during which the judge explained his ruling in terms of the requirements of the *McHoul* case, Dr. Sills was permitted to testify that he

defined "mental disease" conservatively to apply to a person if he is "at the more extreme end of mental illness and psychotic in my opinion." He further testified to the difference between a mental disease and a mental defect, and said that the defendant did not have a mental defect. The defendant rested his case, and the Commonwealth then rested without putting on a psychiatric expert in rebuttal, as originally planned.

The defendant was not precluded from obtaining Dr. Sills's diagnosis of the defendant's mental condition at the time of the killings. All that was restricted was the eliciting of the expert's opinion of the defendant's criminal responsibility in terms other than those outlined in *McHoul.* An expert opinion concerning criminal responsibility must be given according to the *McHoul* standard, but an expert may testify to his diagnosis even if in his opinion the defendant was not suffering from a "mental disease or defect."[2] Since, in an appropriate case, the jury must make the factual determination whether a defendant was legally insane at the time of his allegedly criminal conduct, they should be allowed to have information concerning the defendant's mental state. Although a particular expert's definition of the terms "mental disease or defect" is helpful to the jury in their finding, the jury are not required to adopt any particular definition as their own in a particular case. It is well established that experts differ on their definition of those terms. See, e.g., *Drope* v. *Missouri,* 420 U.S. 162, 176 (1975); Model Penal Code § 4.01, Comment at 160 (Tent. Draft No. 4, 1955); A.S. Goldstein, The

---

[2] Once an expert for the defendant has testified, under the *McHoul* test, in support of the defendant's claim that he was not criminally responsible, a rebuttal expert for the Commonwealth may testify that, in his opinion, the defendant possessed substantial capacity to appreciate the criminality of his action and to conform his conduct to the requirements of law, even if, in his opinion, the defendant was not suffering from a mental disease or defect at the time of the allegedly criminal conduct. This is so because, if the jury believe the defense expert's opinion that the defendant was suffering from mental disease or defect, the Commonwealth should be allowed to offer rebuttal testimony on the remaining aspects of the *McHoul* standard. See *Commonwealth* v. *Marshall, ante,* 65, 70-71 (1977).

Insanity Defense 47-48, 134 (1967); Green, Proof of Mental Incompetency and the Unexpressed Major Premise, 53 Yale L.J. 271 (1944). In *Commonwealth* v. *McHoul, supra* at 550, we indicated that one of the advantages of the Model Penal Code test for insanity "is that under it, experts will be unrestricted in stating all that is relevant to the defendant's mental illness.... This means that experts experienced in the study and treatment of the mentally ill may testify fully as to the nature and extent of impairment of defendants' mental faculties as well as their observations or other bases for their conclusions" (footnote omitted). The use of the words "mental illness" and "mental faculties" indicates that expert testimony regarding a defendant's mental state would be admitted even if the expert does not believe or testify that the defendant was criminally irresponsible within the *McHoul* test. See *id.* at n.6; Model Penal Code § 4.07 (4) and Comment at 198 (Tent. Draft No. 4, 1955); Huckabee, Resolving the Problem of Dominance of Psychiatrists in Criminal Responsibility Decisions: A Proposal, 27 Sw. L.J. 790, 791 (1973). The sole restriction we place on the admission of an expert's opinion concerning a defendant's mental state is that he may express an opinion only in accordance with the standard of the *McHoul* case.

Although defense counsel had earlier indicated that he would like to make an offer of proof, he made no such offer. Dr. Sills did testify to a diagnosis and gave his conclusions regarding the defendant's personality type and intelligence. There is little in the record to show what Dr. Sills would have testified to additionally, if he had been permitted to do so. On the record, we find no basis for a conclusion that Dr. Sills's excluded testimony would have aided the defendant.

The defendant has appended Dr. Sills's report to his brief. The Commonwealth argues that we should disregard the report. In assessing whether there was reversible error in the judge's ruling restricting further testimony from Dr. Sills, we agree that the report may not be considered. Moreover, our obligation under G. L. c. 278, § 33E, to con-

sider the whole case, extends only to the record on appeal. See *Commonwealth* v. *Simpson*, 370 Mass. 119, 126-127 (1976). An unauthorized annexation to a brief is not part of the record on appeal for the purposes of G. L. c. 278, § 33E. Thus, the defendant has brought nothing before us with which he may challenge the application of the *McHoul* standards in this case.

The defendant did not claim surprise by his expert's testimony, and he hardly could have. Dr. Sills's report, dated more than three months before trial, indicates that he did not regard the defendant's mental condition on the night of the killings as a disease.[3] The defendant never sought to obtain another psychiatric expert. See *United States* v. *Dwyer*, 539 F.2d 924, 926-928 (2d Cir. 1976). From Dr. Sills's testimony, it appears that he did not believe the defendant was insane under the *McHoul* test, although on certain facts it appears (from his report) that he was prepared to testify that the defendant was in a dissociative state at the time of the killings.[4]

The defendant seems to argue that the judge should have submitted the question of his sanity, or criminal responsibility, to the jury. When the defense of insanity has been raised by the evidence, the judge must give a requested instruction concerning the defendant's criminal responsibility. In *Commonwealth* v. *Kostka*, 370 Mass. 516,

---

[3] "Dissociative reaction is not a mental 'disease' insofar as I have reserved the term 'mental disease' for conditions of psychotic proportions. Others have, of course, defined clear neurotic conditions as 'diseases:' and have even gone so far as to label 'personality disorders.' "

[4] We note that Dr. Sills's report itself suggests that, on the facts of the case, the defendant may not have had a "dissociative reaction" during which he lacked the "substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." *Commonwealth* v. *McHoul, supra* at 547, quoting from Model Penal Code § 4.01 at 66 (Proposed Official Draft 1962). Dr. Sills stated in his report that a dissociative state "would have a distinct and clear amnesic period from a given point in time until an exact moment when one 'comes to' or 'wakes up' with total amnesia for the intervening period. So his failure to tell and retell a consistent story of what he remembers must be weighed against his contention that he does [not-*sic*] recall the murders."

526-527 & n.7 (1976), we noted that evidence tending to show insanity "may enter the case during the prosecution's case in chief, either ... [by] direct questioning or ... cross-examination." Of course, often the defendant's asserted lack of criminal responsibility is supported by expert testimony on his behalf. See, e.g., *Commonwealth* v. *Walker,* 370 Mass. 548, 577 (1976); *Commonwealth* v. *Kostka, supra* at 525-526; *Commonwealth* v. *Boyd,* 367 Mass. 169, 172 (1975); *Commonwealth* v. *Costa,* 360 Mass. 177, 182-183 (1971); *Commonwealth* v. *Smith,* 357 Mass. 168, 177 (1970); *Commonwealth* v. *Ricard,* 355 Mass. 509, 514 (1969); *Commonwealth* v. *Francis,* 355 Mass. 108, 110 (1969); *Commonwealth* v. *DeSalvo,* 353 Mass. 476, 478 (1968); *Commonwealth* v. *Chester,* 337 Mass. 702, 708-709 (1958); *Commonwealth* v. *McCann,* 325 Mass. 510, 514 (1950). We have recognized, however, that the facts of the crime are an element which may be considered in support of an insanity defense. See, e.g., *Commonwealth* v. *Costa, supra* at 182; *Commonwealth* v. *Francis, supra* at 111. Cf. *Commonwealth* v. *Cox,* 327 Mass. 609, 615 (1951) (defendant's acts considered in granting a new trial under G. L. c. 278, § 33E). Indeed, we have suggested recently that a defendant "might argue that the very facts of the alleged crime create an inference of mental disease or defect." *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 765 (1977). Thus, expert testimony is not required to raise a defense of the lack of criminal responsibility. *Id. United States* v. *Hartfield,* 513 F.2d 254, 260 & n.3 (9th Cir. 1975). In *Commonwealth* v. *McInerney, ante,* 136, 151 (1977), we noted that "the question whether the evidence in any particular case was sufficient to require the judge to instruct on the subject does not appear to have been at issue in any case decided by this court." In the *McInerney* case, we held that certain statements made by the defendant and his history of impotency were insufficient to raise the issue of criminal responsibility.

As an issue considered apart from our obligations under G. L. c. 278, § 33E, the defendant's argument that the judge should have charged the jury pursuant to an "insan-

ity defense" is wholly lacking in merit. The defendant did not request an instruction on the question of his sanity. He did not object to the judge's charge.[5] We consider the contention that the defendant's criminal responsibility was an issue only as it relates to our function under G. L. c. 278, § 33E.

The burden was on the Commonwealth to prove the defendant's criminal responsibility beyond a reasonable doubt. *Commonwealth* v. *Mutina,* 366 Mass. 810, 815 n.2 (1975). The "presumption of sanity" operates procedurally to meet that burden until the question of the defendant's sanity is raised. *Commonwealth* v. *Kostka,* 370 Mass. 516, 530 (1976).[6]

The evidence was sufficient to raise a question of the defendant's criminal responsibility. The victims were stabbed repeatedly and their bodies mutilated. The evidence would permit a finding that the defendant was a drug user of marginal intelligence who had no memory of his conduct after he entered the victim's premises. He told the police that he remembered walking on the driveway, and that he felt strange, "kind of like floating." He testified that he "felt almost like I was hallucinating." An insanity defense may be raised properly by the admission of any evidence which, if believed, might create a reasonable doubt con-

---

[5] Indeed, in his brief counsel for the defendant says that he did not press the defense of insanity in his considered judgment "since such a request could well have prompted a most damaging charge on the absence of evidence of insanity." In another portion of his brief, however, the defendant argues that sanity was placed in issue by evidence apart from the rejected psychiatric testimony.

[6] Even after the question of a defendant's sanity is raised, in this Commonwealth the jury may "weigh the facts underlying the presumption and the inferences that may follow from those facts." *Commonwealth* v. *Kostka,* 370 Mass. 516, 530-531 (1976). The Commonwealth thus may meet its burden in particular cases, without introducing expert testimony, by relying on the circumstances underlying the so called presumption and on evidence at the trial. *Commonwealth* v. *Walker,* 370 Mass. 548, 577 n.20 (1976). *Commonwealth* v. *Kostka, supra* at 535-536. However, the absence of expert rebuttal evidence from the Commonwealth in the face of expert testimony on behalf of a defendant might prompt this court, in particular circumstances, to order a new trial pursuant to its authority under G. L. c. 278, § 33E.

cerning the defendant's criminal responsibility at the time of the killings. *United States* v. *Currier,* 405 F.2d 1039, 1042 (2d Cir.), cert. denied, 395 U.S. 914 (1969). See A.S. Goldstein, The Insanity Defense 112-113 (1967). However, as we have said, because the defendant not only did not request an instruction on criminal responsibility but consciously eschewed pressing the point, the matter of his criminal responsibility was not fairly raised in this case.

We conclude under our obligation pursuant to G. L. c. 278, § 33E, that the defendant is not entitled to a new trial on the ground that his criminal responsibility was not submitted to the jury.[7] His argument, if accepted, would mean that a defendant could conduct his defense on one theory, such as a claim, as here, that someone else committed the crime, and then argue on appeal that he should have a new trial because he did not advance a claim of criminal irresponsibility, as he should have. We do not regard G. L. c. 278, § 33E, as a procedural device by which a defendant may challenge his own trial tactics.

Even if a defendant were permitted to pursue such a dichotomous approach under G. L. c. 278, § 33E, the record in this case does not support a claim that he should have a new trial in which he could try the question of his criminal responsibility. This is unlike those cases involving an insanity defense where this court or certain Justices have concluded that a new trial should be granted in exercise of this court's power under G. L. c. 278, § 33E. See *Commonwealth* v. *Walker,* 370 Mass. 548, 584 (1976) (Hennessey, C.J., and Kaplan, J., dissenting in part) (Liacos, J., concurring); *Commonwealth* v. *Kostka,* 370 Mass. 516, 539 (1976) (Hennessey, C.J., and Kaplan, J., dissenting in part); *Commonwealth* v. *Francis,* 355 Mass. 108, 112 (1969) (Whittemore and Cutter, JJ., dissenting); *Commonwealth* v. *Cox,* 327 Mass. 609, 615 (1951). In all these cases, the defendant actively asserted his lack of criminal

---

[7] The judge did charge the jury that they could consider the possibility that the defendant lacked the capacity to commit murder in the first degree because of his consumption of liquor.

responsibility, and there was expert testimony indicating that the defendant was not criminally responsible. In all but the *Francis* case, there was no expert testimony at all on behalf of the Commonwealth concerning the defendant's sanity.[8] Here the only expert testimony indicated that the defendant was not suffering from a mental disease or defect at the time of the killings.[9] From our assessment of this entire record, we conclude that substantial justice does not require a new trial at which the defendant's criminal responsibility at the time of the killings would be submitted to the jury. See *United States* v. *Spenard,* 438 F.2d 717, 720 (2d Cir. 1971).

The defendant's motion for a new trial, as argued here, presents no independent issue and was properly denied. Convictions of murder in the first degree were appropriate, and, assuming that the imposition of consecutive life sentences is a matter which we can consider under G. L. c. 278, § 33E, we believe that consecutive sentences were fully warranted in this case. The convictions are affirmed.

*Judgments affirmed.*

---

[8] In the *Francis* case, the Commonwealth's expert was equivocal. 355 Mass. at 110, 112.

[9] The Commonwealth had an expert available who did not testify. Presumably he would have testified that the defendant was sane.