COMMONWEALTH *vs.* GLENN A. MATTSON.

Plymouth. January 3, 1979. — March 29, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Practice, Criminal,* Speedy trial. *Insanity.*

The provisions of G. L. c. 277, § 72A, did not require dismissal of charges tried after the six-month period called for by the statute had expired where action was taken on the defendant's case within a few months after his application for a speedy trial and the subsequent delay was not due to any bad faith by the Commonwealth but was the result of the absence of any criminal sessions in the county for a three-month period. [639-641]

Evidence at a criminal trial was insufficient to require the judge to charge the jury with respect to the defense of insanity. [641-645]

INDICTMENTS found and returned in the Superior Court on October 1, 1975.

The cases were tied before *Chmielinski,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James B. Krasnoo* for the defendant.

---

*Robert M. Payton,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J. The defendant was convicted of assault with intent to murder, assault with intent to commit rape, and assault and battery with a dangerous weapon. The judgments were affirmed by the Appeals Court, *Commonwealth* v. *Mattson,* 6 Mass. App. Ct. 893 (1978), and we granted the defendant's application for further appellate review. G. L. c. 211A, § 11. Two issues are raised: Whether the trial judge erred in refusing to dismiss the case for lack of a prompt trial under G. L. c. 277, § 72A, and whether the judge erred in refusing to submit the defense of insanity to the jury. We hold that there was no error, and we affirm the judgments.

1. *The speedy trial issue.* The indictments on which the defendant was tried were returned on October 1, 1975, and pleas of not guilty were entered approximately one week later. On June 29, 1976, the defendant, who was then serving a term of imprisonment at the Massachusetts Correctional Institution at Norfolk on another conviction, applied for a "prompt trial" under G. L. c. 277, § 72A, as appearing in St. 1965, c. 343. This statute provides that any prisoner serving a term of imprisonment "shall, within six months after such application is received by the court, be brought into court for trial or other disposition . . . unless the court shall otherwise order." On October 13 and 26, 1976, the defendant was brought into court and both the Commonwealth and the defense were ready for trial. Although the defendant's case was placed on the October trial list, it was not reached. Since there were no criminal sessions of the Superior Court in Plymouth County in November, December, and January, the case was not tried during those months.[1] On February 17, 1977, the defendant moved to dismiss the indictments for lack of a speedy trial

---

[1] The only criminal session during this period was a two-week sitting in January by a District Court judge to hear juvenile appeals.

under G. L. c. 277, § 72A.[2] This motion was denied, and the case came to trial on February 23, 1977, approximately six weeks after the six-month period called for by the statute had expired.

In considering claims under G. L. c. 277, § 72A, we have repeatedly disavowed any interpretation of the statute which would "mandate a per se rule of dismissal after the statutory period has expired." *Commonwealth* v. *Royce, ante* 356, 363 (1979), quoting from *Commonwealth* v. *Alexander*, 371 Mass. 726, 728-729 (1977). *Commonwealth* v. *Fields*, 371 Mass. 274, 280-281 (1976). *Commonwealth* v. *Daggett*, 369 Mass. 790, 793 (1976). The purpose of the statute, according to our decisions, is not to solve all the problems connected with the concept of speedy trials, but to establish "a priority for trials of defendants who are already in custody." *Commonwealth* v. *Gove*, 366 Mass. 351, 355 (1974), quoting from *Commonwealth* v. *Stewart*, 361 Mass. 857, 858 (1972). Here, the defendant's motion for a prompt trial did provoke action before four months had passed, and the Commonwealth was prepared to go to trial well within the six-month statutory period. It is true that the absence of criminal sessions in Plymouth county for the next three months cannot be charged against the defendant but it also negates any suggestion of bad faith or undue delay by the Commonwealth. Although there is evidence that the defendant was aware of this state of the court calendar, he expressed no special concern about it.

It is true that in *Commonwealth* v. *Beckett*, 373 Mass. 329, 335 (1977), we stated that the problem of court congestion alone cannot excuse unreasonable delays in granting trials to defendants who actively seek them, but that was in the context of a fifty-five month delay between indictment and trial. In that case, the constitutional—and not a statutory — right to speedy trial was at

---

[2] The defendant does not argue, and we do not address any issue of denial of his constitutional right to a speedy trial.

issue, and we affirmed the conviction despite long periods of delay.

Prior cases in which we have affirmed the dismissal of charges for failure to comply with G. L. c. 277, § 72A, were marked both by (1) no action of any sort on the defendant's case within the six-month period and (2) no reason whatsoever for the delay. See, e.g., *Commonwealth* v. *Donati*, 373 Mass. 769 (1977); *Commonwealth* v. *Alexander, supra*; *Commonwealth* v. *Fields, supra*. Neither factor is present here. Some action was taken on the defendant's case within a few months, thus assuring him that efforts were being made to reach it for trial as soon as possible. The subsequent delay was explained by an unfortunate, but unavoidable, limitation of criminal sessions. We do not believe dismissal was required under these conditions. See *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. 571, 578, 579 (1977); *Commonwealth* v. *Ambers*, 4 Mass. App. Ct. 647, 652 (1976).

We deem it necessary to repeat once again our longstanding advice to the trial judges that the best procedure under § 72A is for the judge to enter an order expressly extending the statutory period in those cases where it proves necessary, stating the reasons therefor, and that this be done within six months after the request under § 72A, if possible. *Commonwealth* v. *Boyd*, 367 Mass. 169, 179 (1975). This practice would provide guidance to both the defense and the prosecution, permit either party to take any further action it deems appropriate, and provide a clear record for later appellate review. Again we urge the trial judges to follow this procedure.

2. *The insanity issue*. As background for our discussion of this issue, a brief review of the evidence at trial is appropriate. The Commonwealth's only witnesses were the victim and the police officer who arrested the defendant. The victim testified that the defendant was a friend of Robin Pappas, her boy friend, and that the three of them spent time together at the defendant's apartment on the afternoon of the crime. The defendant and Pappas

left the apartment to get something and the defendant returned alone a few minutes later. He began hitting the victim with two "Chinese fighting sticks" he had demonstrated to his guests earlier that afternoon. Saying, "I want you" and "I'm going to kill you" to the victim, the defendant knocked her down, jumped on her, partly ripped off her clothes, and started to choke her. After about ten minutes, the victim ceased struggling and briefly passed out. When she regained consciousness, the defendant asked her what had happened, and whether she had fallen and hit her head on the coffee table. Pappas came back shortly thereafter and took her to the hospital. The defendant followed them to the hospital, where he was arrested by the police.

The victim, when cross-examined by the defendant's attorney, testified that the defendant appeared "more forward," "louder," and "really different" when he returned alone to the apartment just prior to the attack, and that during the attack his voice was "scary loud," his face was "real scary," he was "gritting his teeth" and appeared "wicked mean," and that this was in contrast to his "soft-spoken" "regular" manner throughout the earlier part of the afternoon. The arresting officer testified about the defendant's manner at the hospital shortly after the incident and stated that the defendant appeared "normal" and "cooperative."

After the defendant had rested without putting on any evidence, his attorney informed the judge of his intent to rely on a defense of insanity,[3] requested the judge to instruct the jury on this issue, and stated that he planned to argue insanity in his summation. The judge, stating that "the issue of sanity has not been raised," refused to charge the jury on a verdict of not guilty by reason of

[3] Earlier, another judge had ordered a psychiatric examination of the defendant under G. L. c. 123, § 15A, immediately after his arraignment. The report of this examination was entered on the docket on October 20, 1975, but neither side referred to it at trial and its contents do not appear on the record.

insanity, and sustained the Commonwealth's objection to the defendant's argument on that issue.[4] The defendant now claims these rulings are in error.

In *Commonwealth* v. *Laliberty*, 373 Mass. 238, 246-247 (1977), we stated that "[a]n insanity defense may be raised properly by the admission of any evidence which, if believed, might create a reasonable doubt concerning the defendant's criminal responsibility at the time of the [crime]," and we noted that once the defense has been raised by the evidence, the judge must instruct on it, if requested to do so. The question of how much evidence is sufficient to require the requested instruction was squarely faced in *Commonwealth* v. *McInerney*, 373 Mass. 136, 151 (1977), where we held that evidence that the defendant had sought medical help for impotency and may have attempted suicide was not enough to require an insanity charge.

The defendant here argues that the circumstances of his crime alone were sufficient to warrant submission of the insanity issue to the jury. He relies especially on the completely unprovoked "Jekyll and Hyde" change in his personality from that of the "soft-spoken" companion of the afternoon to that of the violent attacker, and then back to the "cooperative" young man at the hospital who stated to the police that the victim had fallen and hit her head. While we agree that these facts are indeed bizarre, and perhaps even in colloquial language might be labelled "insane," the defendant's argument misconceives the essential prerequisites of *legal* insanity. Legal insanity — sufficient to warrant a verdict of "not guilty" on that ground—requires (1) a "mental disease or defect" which causes lack of substantial capacity either (2) to appreciate the wrongfulness of one's acts or (3) conform

---

[4] The defense attorney did argue, without objection, that the irrationality of the defendant's behavior negated the presence of the specific intent required for a guilty verdict on the indictments which charged assault with intent to murder and assault with intent to commit rape.

one's conduct to the law. *Commonwealth* v. *McHoul*, 352 Mass. 544, 546-548 (1967). There was simply no evidence here from which a jury could be left with a reasonable doubt about the defendant's criminal responsibility under this test.

In an appropriate case the very facts of a crime themselves might be some evidence of the existence of legal insanity. *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 765 (1977). See *Commonwealth* v. *Francis*, 355 Mass. 108, 111, 112 (1969). We have stated in earlier decisions that expert testimony on the issue of insanity is not necessarily required, and that the issue may be raised by the facts of the case, by the Commonwealth's witnesses, by lay testimony, by the defendant's own testimony or any combination of these situations. *Commonwealth* v. *Laliberty, supra. Blaisdell* v. *Commonwealth, supra. Commonwealth* v. *Kostka*, 370 Mass. 516, 527 n.7 (1976). See A.S. Goldstein, The Insanity Defense 113 (1967). Where the appropriateness of an insanity instruction is marginal, the better choice would seem to be to err on the side of giving it, since the Commonwealth has the ultimate burden of proving the defendant sane beyond a reasonable doubt, and the jury are "the sole judge[s] of this factual issue." *Commonwealth* v. *Smith*, 357 Mass. 168, 180 (1970). *State* v. *Trantino*, 44 N.J. 358, 369 (1965), cert. denied, 382 U.S. 993 (1966). *McDonald* v. *United States*, 312 F.2d 847, 849 (D.C. Cir. 1962). The Commonwealth can protect itself from a defendant's last-minute surprise decision to rely on the defense of insanity by requesting disclosure prior to trial of his intent to do so. *Blaisdell* v. *Commonwealth, supra. Gilday* v. *Commonwealth*, 360 Mass. 170, 173 (1971).

But taking even a liberal approach to the submission of the insanity issue to the jury there simply is no triggering evidence in this case sufficient to require such an instruction. The defendant has not pointed to, nor can we find, any case where the inexplicableness of a crime alone raises a jury issue of insanity. We hold that the defend-

ant's request for an instruction on a verdict of not guilty by reason of insanity was properly denied and that the defendant therefore had no right to argue for such a verdict in his summation to the jury.

*Judgments affirmed.*