**Gentric HICKS, Appellant,**

v.

**David SCURR, Warden of the Iowa State Penitentiary, Appellee.**

No. 81–1621.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1981.

Decided Feb. 5, 1982.

Rehearing and Rehearing En Banc Denied March 4, 1982.

Robert Bartels, Sara Megan, argued, Iowa City, Iowa, for petitioner-appellant.

Thomas J. Miller, Atty. Gen. of Iowa, Des Moines, Iowa, Thomas D. McGrane, Asst. Atty. Gen., argued, for respondent-appellee.

Before HENLEY and ARNOLD, Circuit Judges, and HARRIS,* Senior District Judge.

OREN HARRIS, Senior District Judge.

Gentric Hicks was found guilty by an Iowa jury of first degree murder and received a sentence of life imprisonment. The Iowa Supreme Court affirmed the conviction on direct appeal and also affirmed the denial of post-conviction relief. *State v. Hicks*, 277 N.W.2d 889 (Iowa, 1979). Hicks then sought habeas corpus relief in federal court pursuant to 28 U.S.C. § 2254. The District Court for the Southern District of Iowa[1] denied the petition. This appeal ensued.

Hicks predicates his entitlement to federal habeas corpus relief on four grounds: (1) the testimony of a prosecution witness concerning mathematical probabilities associated with fingerprint evidence and the prosecutor's use of this testimony violated his rights under the Sixth and Fourteenth Amendments; (2) the admission of testimony concerning pretrial and in-court identification violated his rights to due process; (3) the refusal to permit defense counsel to correct misleading testimony violated his right to due process; and (4) the failure of the prosecutor to disclose favorable evidence to the defense violated his right to due process. For reasons stated below, we affirm the trial court's denial of the petition for a writ of habeas corpus.

I.

Early on the morning of May 23, 1976, two black men attempted to rob the Hillcrest Motel in Fort Madison, Iowa. While one of the men, Kenneth Lawrence, waited in a car in the motel parking lot, the other man rang the office doorbell, under the pretense of renting a room, and was admitted by Lorraine Foster. After a brief conversation with Mrs. Foster, the man pulled a gun and demanded money. Mrs. Foster's husband, Jimmie, who was asleep in the adjoining apartment, was awakened by the man's voice. He grabbed a rifle, let himself out the back door and woke their son, Jerry. After instructing Jerry to call the police, Mr. Foster circled to the front of the motel where he apprehended Kenneth Lawrence.

In the meantime, the other man had pushed Mrs. Foster through the various rooms of the apartment looking for money. Upon their return to the kitchen, they encountered Jerry. The robber and Jerry scuffled and Jerry was fatally shot. The man fled.

---

* Oren Harris, Senior District Judge, Eastern and Western Districts of Arkansas, sitting by designation.

1. The Honorable Harold D. Vietor, United States District Judge, Southern District of Iowa, Central Division.

258

Shortly thereafter, the sheriff and the police arrived. Mrs. Foster gave the police a description of her son's killer. Kenneth Lawrence informed Mr. Foster, and later the police, that the assailant was Willie Jefferson, the half-brother of the petitioner.

Later, on the morning of the murder, Kenneth Lawrence changed his story and stated that the petitioner, not Willie Jefferson, was the perpetrator. That same morning, Mrs. Foster, while viewing a photo display, identified the petitioner as her son's murderer.

A second pretrial identification was made eighteen days later. A physical line-up was conducted and Mrs. Foster identified the petitioner as the perpetrator.

At the trial, the prosecution relied heavily upon Mrs. Foster's pretrial and in-court identifications of the petitioner and the testimony of Kenneth Lawrence who testified pursuant to a plea agreement. Further, there was testimony by a fingerprint expert regarding latent prints found at the motel.

The petitioner testified he had been with Kenneth Lawrence but that he had consumed a large amount of alcohol and had smoked several marijuana cigarettes. He stated he had passed out and that his next memory was of awakening in the hallway of an apartment building the next morning.

## II.

As heretofore stated, the petitioner's first ground to support his petition for a writ of habeas corpus deals with the admission of testimony concerning mathematical probabilities pertaining to certain fingerprint characteristics found at the murder scene and those of the petitioner. Darwin Chapman, "a criminalist" (sic), testified that he found there to be ten points of similarity between the prints of two of petitioner's fingers (the right middle and ring fingers) and a set of latent prints found in the kitchen of the motel. He also stated he found no points of dissimilarity although he was unable to make a positive identification in the "classical" sense. Mr. Chapman also

noted that on the latent print of a right ring finger, there was an impression of a scar; Gentric Hicks also has a scar on the right ring finger. He states this scar was not used as one of the ten points of similarity. Chapman opined that the prints found were those of the petitioner, Gentric Hicks.

The troublesome aspect of Mr. Chapman's testimony arises in the following questions and answers:

Q. Do you have a numerical opinion as to the probabilities that these prints are that there might be another print available or another print identical that would make these impressions?

A. Yes, I do.

Q. Would you indicate to the jury what that opinion is, as a matter of an opinion, and also how you arrived at it?

A. Yes, I will. It is my opinion that the possibility of another individual having the same minutia or individual characteristics that I found in the latent fingerprints of Mr. Hicks, the chances of another individual having those, not only those same individual characteristics but the same number of them, would be one in approximately seven million.

Mr. Chapman then went on to explain the method he utilized to arrive at this figure.[2] Counsel for the defendant objected to this testimony on the basis that it called for an opinion and conclusion. This objection was overruled by the state trial court.

The prosecutor utilized the one in seven million figure in his closing argument. He stated the odds were extremely high that the latent fingerprint belonged to Gentric Hicks.

Counsel for the petitioner has submitted the affidavit of Professor Johannes Ledolter which states the "factorial" method used by Mr. Chapman was not an appropriate method. He further states the correct method would yield a figure of 1 in 30,240. We, like the trial court, do not doubt the validity of Professor Ledolter's conclusions

2. Chapman utilized a factorialization of ten method.

that the one in seven million figure is substantially incorrect. The admission of this probability testimony alone, however, is not per se a violation of due process.

■ While the petitioner's trial counsel did make an objection to the mathematical probability, it was not based upon due process grounds. This failure to object precludes federal habeas corpus relief unless the standards enunciated by the United States Supreme Court are met. Absent compliance with an applicable state contemporaneous objection rule, a state prisoner can assert alleged trial errors in a federal habeas corpus proceeding only after showing "cause" for not making a contemporaneous objection and "prejudice" from the alleged error. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). We believe this case comes within the purview of *Wainwright*, and hence, petitioner must demonstrate both "cause" and "prejudice" relating to the omitted objection.

We have no trouble finding the petitioner has established "cause" under the *Wainwright* standard. Both of his trial counsel have filed affidavits stating they did not anticipate Mr. Chapman's probability testimony and were unaware he utilized an erroneous method in computing the probability. Further, they were both unaware there was a possible due process objection to the probability testimony and the subsequent use of it. Finding the mathematical calculations complex and very technical, this Court has no problem in sustaining the trial court's decision that adequate "cause" has been demonstrated with regard to the failure to object.

■ Finding sufficient cause for the failure to object, the Court must next determine whether the admission and use of the fingerprint probability testimony rendered the trial so unfair as to deprive the petitioner of fundamental due process. Before federal courts are afforded jurisdiction to review these claims, alleged errors must be so egregious and so erode procedures that the fundamental fairness of the trial is affected. *Batten v. Scurr*, 649 F.2d 564, 571 (8th Cir. 1981). This is true of both errors in admission of evidence and prosecutorial comments. *Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir.), cert. denied, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976). *Cobb v. Wainwright*, 609 F.2d 754 (5th Cir.), cert. denied, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980).

■ In a habeas corpus action, the petitioner must establish an error which demonstrates a violation of due process. This burden is much greater than that required on direct appeal and is even greater than the showing of plain error on direct appeal. *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).

■ The admission of statistical evidence is sanctioned. Problems occur, however, when the statistics are used to demonstrate or prove guilt beyond a reasonable doubt. Petitioner relies heavily upon *U.S. v. Massey*, 594 F.2d 676, 680 (8th Cir. 1979), and *People v. Collins*, 68 Cal.2d 319, 66 Cal.Rptr. 497, 438 P.2d 33 (1968).

In *U.S. v. Massey*, supra, this Court reversed the bank robbery conviction of Massey because of the misuse of misleading mathematical odds. An expert in microscopic analysis had testified that three hairs found in a ski mask were similar to hair samples taken from Massey. The expert further stated that he had examined samples in some 2000 cases and on only two occasions had he been unable to distinguish between the hairs of two individuals. In closing argument, the prosecutor converted the 2 in 2000 to a percentage of 99.44 percent, and stated the hair sample alone was enough to prove Massey's guilt beyond a reasonable doubt.

We stated: "The prosecutor 'confused the probability of concurrence of the identifying marks with the probability of mistaken identification' of the bank robber." *U.S. v. Massey*, supra, at 681. We found plain error and reversed.

■ The conviction of Massey, aside from the probability testimony, was based on circumstantial evidence.

Although the cumulative effect of this evidence points a strong finger of suspicion it is not in itself sufficient to prove that Massey was one of the bank robbers. The linchpin is established, however, when this evidence is weighed with the testimony of the Government's expert which established that three of five hair samples found in the blue ski mask (similar to the one used in the robbery) matched in all areas of microscopic comparison with known samples of defendant's hair.

*U.S. v. Massey*, at 678–679. Unlike *Massey*, the evidence in this case is not circumstantial. Mrs. Foster's identification of petitioner as the murderer and the testimony of Kenneth Lawrence provided sufficient evidence to sustain a conviction. When coupled with the fact that this is a habeas corpus proceeding and thus governed by a more stringent standard of review, this Court is convinced *Massey* does not require a reversal. We find no error so egregious that it compels federal habeas corpus relief. There was certainly sufficient evidence to sustain a conviction beyond a reasonable doubt.

Having reached the decision there was not an error which deprived the petitioner of due process, we need not reach the issue of determining "prejudice" under *Wainwright*, supra.

### III.

Hicks contends that the pretrial photograph display and pretrial line-up were suggestive and conducive to mistaken identification. Hence, he argues, the admission at trial of the identifications made by Mrs. Foster deprived him of due process. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

This issue was thoroughly discussed by the Iowa Supreme Court in its review of petitioner's conviction. *State v. Hicks*, supra. The Iowa Supreme Court concluded the trial court did not err in refusing to suppress the identification evidence.

■■ The authority of this Court is limited by 28 U.S.C. § 2254(d); findings on a factual issue by a state court are presumed to be correct. A review of the state court proceedings convinces us the factual determination made on the issue of suggestiveness are supported by the record. The petitioner has not demonstrated by convincing evidence that the state court determination was erroneous. 28 U.S.C. § 2254(d)(8); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Further, none of the other requirements of § 2254(d) have been established by the petitioner nor admitted by the respondent. Therefore, this Court cannot say the petitioner was denied due process which entitles him to habeas corpus relief.

### IV.

On cross-examination of the sheriff, the petitioner's counsel asked if the petitioner had requested he be given a lie detector test. The sheriff replied:

A. No, sir, I don't recall that, and that I recall of him requesting a lie detector test. I'm sure we probably would have granted that.

A brief recess was immediately taken. In chambers, the prosecutor revealed the petitioner had requested he be given a lie detector test but the sheriff had not been present when the request was made. The prosecutor made a motion in limine that there be no more testimony concerning polygraph tests. The trial judge granted the motion. No objection to the motion or ruling was made by defense counsel. Petitioner now alleges the refusal of the trial court to permit further testimony on this subject prevented him from erasing the mistaken impression created by the sheriff's reply.

■ This issue was not raised in the state courts. While there has been no exhaustion of state remedies, we are convinced there is no Iowa proceeding presently available to the petitioner which would review this claim. *Thomas v. Wyrick*, 622 F.2d 411 (8th Cir. 1980). We believe this issue may properly be addressed by us. *Batten v. Scurr*, supra.

Since no objection was made to the trial court ruling, this issue must also be examined under *Wainwright v. Sykes*, supra. Petitioner's trial counsel stated that they did not "think" in terms of due process and, hence, did not object. There is no allegation they were not knowledgeable of the law. It simply did not occur to them that there was a due process argument. We do not find that the petitioner has demonstrated "cause" for the failure to object to the court's ruling on the motion in limine.

 Even if we were to find "cause" for the failure to object, we could not find the court ruling to have denied the petitioner due process of law. Iowa law prohibits the introduction or use of polygraph evidence in a criminal trial. Petitioner's counsel were attempting to get impermissible evidence before the jury. Any error was invited by the petitioner.

## V.

 The last contention of petitioner is that the prosecutor did not turn over exculpatory material which had been requested. He contends this violated his right to due process of law. This issue has been exhausted in the state courts. A prosecutor must turn over material which is exculpatory. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1973). A failure to do so deprives the accused of due process. The material must be material to guilt or punishment, however.

There are four items which the petitioner did not have at the time of trial. The evidence withheld was (1) a report prepared by Deputy Duffy containing statements made by Mrs. Foster; (2) a report prepared by Sheriff Arnold concerning the photograph array; (3) a report prepared by Deputy Sheriff Taft containing information obtained from interviews with Earl and Val Vincent; and (4) information obtained by Officer Carle concerning the location of the hunting cap worn by the killer.

In *United States v. Agurs*, 427 U.S. 97, 103–07, 96 S.Ct. 2392, 2397–99, 49 L.Ed.2d 342 (1976), the Supreme Court articulated three situations in which the *Brady* rule is applicable. The first situation concerns the use of material or evidence which the prosecutor knew or should have known was perjured. This situation is not present or argued in this case.

The second situation governs when a defendant specifically requested material and it is not disclosed even though the "disclosure might have affected the outcome of the trial." *Agurs* at 104, 96 S.Ct. at 2398. The third situation governs where the accused has generally requested material which is not provided and that material, when evaluated in the context of the entire record, "creates a reasonable doubt that did not otherwise exist." *Agurs* at 112, 96 S.Ct. at 2402. A finding that the nondisclosure produced either of these results compels a finding that the accused was denied due process of law.

The district court found that the petitioner had made no specific requests for exculpatory material. Petitioner concedes that only a general request was made in writing prior to trial. He contends that the request was made specific during the taking of depositions prior to trial. We affirm the finding of the district court that except for the request concerning the description given by Mrs. Foster, there was no specific request. The specificity of a request must be viewed in the context of all the circumstances presented by the case. *Scurr v. Niccum*, 620 F.2d 186 (8th Cir. 1980). We agree with the district court that no specific request was made for three of the items of evidence.

A review of the evidence generally requested does not reveal that the material creates a reasonable doubt that did not otherwise exist. Hence, the petitioner was not denied due process of law by the withholding of the evidence.

 As for the request for the description given by Mrs. Foster on the morning of the murder, the district court found the petitioner made a specific request. We agree, and also agree with the subsequent analysis of the district court. When analyzed in view of *Agurs*, a petitioner is de-

nied due process if information is withheld after a specific request is made if it might have affected the verdict. The district court concluded that the information would not have affected the verdict. The description, while less detailed, was consistent with the other descriptions she gave the police.

A review of the record compels a finding that the district court correctly denied the petition for a writ of habeas corpus. We, therefore, affirm.