John E. MILLER, Petitioner and Appellant,

v.

STATE of South Dakota, Respondent and Appellee.

No. 13920.

Supreme Court of South Dakota.

Argued March 22, 1983.

Decided Sept. 28, 1983.

See also, 313 N.W.2d 460.

Jeff Larson, Minnehaha County Public Defender, Sioux Falls, for petitioner and appellant.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for respondent and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

MORGAN, Justice.

This appeal arises from a trial court's order denying appellant John Miller (Miller) post-conviction relief from a conviction for escape from the South Dakota State Penitentiary (penitentiary). Miller appeals and we affirm.

On November 13, 1979, while serving the fourth year of a twenty-five year sentence in the penitentiary, Miller escaped from the penitentiary's "west farm" near Ellis, South Dakota. Approximately four days later, Miller was arrested in Dodgeville, Wisconsin. He was subsequently convicted by a

jury of escape and sentenced to two and one-half years in the penitentiary. This court affirmed that conviction in *State v. Miller,* 313 N.W.2d 460 (S.D.1981).

Miller now brings this post-conviction proceeding under the provisions of SDCL ch. 23A–34. The trial court denied Miller's request for post-conviction relief and Miller appeals. The issues on this appeal, as framed by Miller, are whether the trial court's inquiry as to Miller's reasons for requesting a change of judge denied Miller due process of law; whether the prosecution's and trial court's misinforming the jury regarding Miller's plea to the information denied Miller his right to a fair and impartial jury trial and his right to due process of law; whether the trial court's failure to properly instruct the jury on Miller's mental illness defense denied Miller his right to a fair and impartial jury trial and his right to due process of law; and, whether Miller was denied his right to effective assistance of counsel.

The grounds for instituting a post-conviction proceeding are provided at SDCL 23A–34–1,[1] which states:

Except at a time when direct appellate relief is available, any person who has been convicted of, or sentenced for, a crime and who claims:

(1) That his conviction or sentence was in violation of the Constitution of the United States or the Constitution of this state;

. . . .

(4) That there exists evidence of material facts bearing upon the constitutionality of the petitioner's detention or sentence, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

. . . .

(6) That his conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy;

may institute a proceeding under this chapter to secure relief.

 A post-conviction proceeding is not a substitute for a direct appeal. *See Rauscher v. State,* 292 N.W.2d 106 (S.D. 1980). The burden of establishing a basis for post-conviction relief rests upon a petitioner. *State v. Roth,* 84 S.D. 44, 166 N.W.2d 564 (1969). The court must make specific findings of fact, and state expressly its conclusions of law on each issue presented. SDCL 23A–34–18. On appeal, this court cannot disturb such findings unless they are clearly erroneous. SDCL 15–6–52(a); *Gregory v. State,* 325 N.W.2d 297 (S.D.1982); *Spirit Track v. State,* 272 N.W.2d 803 (S.D.1978).

Miller's first claim is that the trial court's inquiry into his reasons for requesting a change of judge denied him due process of law. Three days prior to his trial for escape, Miller moved for a change of judge. SDCL 15–12–27 requires such a motion to be made at least ten days prior to the date of trial. Since the motion was not properly made, the trial court rejected it.

 Before proceeding with the case, however, the trial court judge asked Miller for the reasons for the motion for change of judge. Although the judge need not have asked for the reasons for the motion, *see State v. Thompson,* 43 S.D. 425, 180 N.W. 73 (1920), Miller did not object to the judge's questions. Further, when Miller directly appealed his conviction to this court, he did not raise this issue. The general rule is that a petitioner who takes a direct appeal cannot thereafter raise in a post-conviction proceeding any matter which he knew at the time of the direct appeal, but did not raise. *Geelan v. State,* 85 S.D. 346, 182 N.W.2d 311 (1970); *State v. Roth, supra.* Since Miller did not object to the judge's questions and further, was aware of this issue when he directly appealed his convic-

---

1. SDCL ch. 23A–34 which provided for post-conviction proceedings was repealed by 1983

S.D.Sess.L. ch. 169, § 15.

tion, he cannot raise it now in this post-conviction proceeding.

Miller's second contention is that the prosecutor and trial court misinformed the jury of Miller's plea to the information. SDCL 23A–24–2 provides, in pertinent part, that: "After a jury has been impaneled and sworn, a trial must proceed in the following order: (1) If the . . . information is for a felony, the clerk or prosecuting attorney must read it and state the plea of the defendant to the jury." When Miller was arraigned on April 8, 1980, he pleaded not guilty and not guilty by reason of insanity. At that time, Russell D. Kading (Kading) was Miller's attorney. Subsequently, Kading withdrew and A. Thomas Pokela (Pokela) was appointed. The judge ordered a psychiatric report on Miller and as Pokela testified at the post-conviction hearing when Pokela received the report he felt there were no grounds to proceed with the defense of insanity at trial. Consequently, when the plea to the information was read to the jury at trial, only the plea of not guilty was read; the plea of not guilty by reason of insanity was not read. Miller now contends he did not intend to drop the defense of insanity and the failure to read the entire plea constitutes reversible error.

In previous cases, where the plea to the information was incorrectly read, the inaccuracy was later cured by one of the attorneys or the judge. See State v. Wilson, 297 N.W.2d 477 (S.D.1980); State v. Hoover, 89 S.D. 608, 236 N.W.2d 635 (1975). Significantly here, Miller had requested and had been appointed co-counsel before the trial started.[2] Neither Pokela nor Miller objected to the fact that only one of the defenses was read. Moreover, Pokela testified at the post-conviction hearing that before the trial he and Miller discussed the defense of insanity after receiving the psychiatric report and they agreed not to pursue the insanity plea.[3]

■ Clearly, here, Miller and his co-counsel, Pokela, did not object to the plea as

read, did not attempt to correct this alleged error at trial and also did not move for a new trial or raise this as an assignment of error on direct appeal. Moreover, the record indicates that this defense of insanity was abandoned before trial. Accordingly, the trial court did not err by reading only the plea of not guilty to the jury.

We now turn to Miller's third contention which is that the trial court's failure to properly instruct the jury on Miller's mental illness defense denied Miller his right to a fair and impartial jury trial and to due process of law.

■ Although errors in instructing the jury do not always rise to a constitutional level as required by Rauscher, supra, if the error goes to the heart of a defendant's theory of defense it can infringe upon defendant's rights to due process and jury trial. Zemina v. Solem, 438 F.Supp. 455 (D.S.D.1977) aff'd 573 F.2d 1027 (8th Cir. 1978). A trial court is required to instruct on the law only when there exists evidence on the record upon which such instruction can be based. State v. Bean, 265 N.W.2d 886 (S.D.1978). Miller now asserts that the heart of his defense was mental illness. As a veteran of Vietnam, Miller claims the stressful circumstances at the penitentiary caused his mind to snap and he began to hallucinate about Vietnam. Miller claims he "woke up" from the hallucinations when he was arrested in Dodgeville, Wisconsin.

■ According to the record, however, the heart of Miller's theory of defense was not insanity. As Pokela testified at the post-conviction hearing, after receiving the psychiatric report he and Miller discussed the theory of defense and decided to drop insanity as a defense. Additionally, the record overwhelmingly indicates that Miller and Pokela pursued a theory of not guilty by reason of justification. According to testimony at trial, in June, 1979, Miller had been stabbed and severely injured by anoth-

---

**2.** According to the record, the trial court judge explained in detail to Miller the dangers of being his own counsel.

**3.** There was no formal withdrawal of the insanity plea.

er inmate while in the main prison facility. After recovering, Miller was transferred to the penitentiary's "west farm." On the morning of November 13, 1979, guards informed Miller that he was being returned to the main prison facility later that day. Thereafter, according to the testimony, Miller, fearing for his life, left the "west farm" before he could be transferred. In our view, the defense of mental illness would be inconsistent with the defense of justification.

Clearly, the record shows that Pokela and Miller decided to abandon the theory of insanity. Moreover, since the testimony overwhelmingly supports the theory of justification, a jury instruction on insanity would not go to the heart of Miller's defense. Accordingly, this does not rise to a constitutional level as required by *Rauscher, supra,* when seeking post-conviction relief. While Miller has the burden of establishing a basis for post-conviction relief, *Roth, supra,* he has failed to meet that burden.

■ We now turn to Miller's final issue which is whether Miller was denied effective assistance of counsel. Every defendant in a criminal prosecution has a constitutional right to counsel.[4] In *Grooms v. State,* 320 N.W.2d 149 (S.D.1982), this court held that when reviewing the issue of ineffective assistance of counsel: (1) an attorney is presumed competent; and (2) the party alleging incompetency has a heavy burden of establishing ineffective assistance of counsel. Additionally, the petitioner attempting to show ineffective counsel must also demonstrate that he was prejudiced by the alleged ineffective assistance. *State v. Pieschke,* 262 N.W.2d 40 (S.D.1978).

The trial court made the following conclusion of law concerning this issue:

(8) The entire record as presented to this court fails to demonstrate ineffective assistance of counsel upon any grounds; and fails specifically upon the ground that counsel failed to file for change of the trial court judge, upon the ground that counsel failed to present a mental illness defense, upon the ground that counsel failed to demand instructions; and upon the ground that counsel failed to request a mistrial. *State v. Grooms,* 320 N.W.2d 149 (S.D.1982) PSCR 41. [*Grooms v. State,* 320 N.W.2d 159 (S.D.1982).]

Accordingly, for this court to reverse the trial court, we would have to find this conclusion in error as a matter of law.

■ Miller's primary claim here is that his co-counsel's failure to pursue the mental illness defense based upon "Vietnam Stress Syndrome" constitutes ineffective assistance of counsel. In support of this contention, Miller cites *United States v. Baynes,* 687 F.2d 659 (3rd Cir.1982), which discusses a defense attorney's duty to investigate possible defense. In *Baynes,* the court held that "a defense attorney, whether appointed or retained, is obligated to inquire thoroughly into all potentially exculpatory defenses and evidence."[5] *Id.* at 668. Similarly, this court held that the right of an accused to the services of an attorney envisages that his attorney will investigate and consider possible defenses. *State v. Walker,* 287 N.W.2d 705 (S.D.1980); *State v. Pieschke, supra.*

The record before us demonstrates that Pokela did not pursue the mental illness defense based upon the "Vietnam Stress Syndrome." He read the psychiatrist's report but did not seek another opinion; nor did he attempt to procure Miller's V.A. records. As Pokela testified, after the trial

---

4. The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right to ... have the assistance of counsel for this defense. Article VI, Section 7 of the South Dakota Constitution states, "In all criminal prosecutions the accused shall have the right to defend in person and by counsel; ...."

5. The American Bar Standards states: "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty." American Bar Association Standards, The Defense Function § 4.1 (1971).

was in progress and Miller had testified, he had second thoughts about the mental illness defense.[6] At that time, however, it was too late since Miller and Pokela had already chosen their trial tactics.

Miller relies upon *Baynes, supra,* a recent Third Circuit Court of Appeals case. In *Baynes,* the Third Circuit Court points out that ordinarily a lawyer is not required to anticipate changes in the law or pursue novel theories of defense.[7] The "Vietnam Stress Syndrome" is a new theory of defense. Neither party cites to a case in which this theory was utilized. The only authority cited by Miller is a 23-page pamphlet published by Disabled American Veterans in 1980. Miller escaped from the penitentiary in 1979 and this trial was held in 1980. While mental illness is an established defense, clearly this "Vietnam Stress Syndrome" is a novel theory of defense— and especially so three years ago, in 1980.

On review, it is not this court's function to second-guess tactical decisions of defense counsel at trial; this court will not substitute its own theoretical judgment for that of counsel. *State v. McBride,* 296 N.W.2d 551 (S.D.1980). Effectiveness of counsel is not to be judged by hindsight. *State v. Bartlett,* 210 Neb. 886, 317 N.W.2d 102 (1982). Miller has a heavy burden in establishing ineffective assistance of coun-

sel, *State v. Walker, supra,* and from our review of the entire record, Miller has not met that burden.

Accordingly, we affirm.

FOSHEIM, C.J., and WOLLMAN and DUNN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

This Vietnam War veteran's plea was "not guilty" and "not guilty by reason of mental illness." Our state statute absolutely mandates that a 'plea be placed before the jury. SDCL 23A–24–2(1).[1] The intent is obvious: 1) so the jury is aware of defendant's legal position that he or she was mentally ill during the commission of the alleged crime; 2) so the state is on its proof with respect thereto; 3) so the jury can track the evidence knowing the defense; 4) so the trial judge can guide the trial with the issues framed in his mind. Defendant's mental illness plea was not presented to the jury by the prosecutor or the clerk, as required by state law. The plea of not guilty by reason of mental illness was never withdrawn. Furthermore, and as I will highlight in this writing, testimony of mental illness pervaded the defense. Therefore, both pleas were alive and for the jury's consideration.[2]

---

6. Pokela later testified that Miller's testimony on the stand differed from what they discussed before trial.

7. *Baynes* applies the *Moore* standard, *Moore v. United States,* 432 F.2d 730 (3d Cir.1970), for determining effective assistance of counsel. *Moore* stresses the customary skill at the time and place of the representation. *Baynes,* 687 F.2d at 668 n. 11, provides:

 "We do not suggest that Trice's counsel was constitutionally negligent in failing to order a spectrographic comparison of the two recordings. In 1975, when this case went to trial, the only Court of Appeals that had ruled on the admissibility of spectrograms had held them to be inadmissible. *See United States v. Addison,* 498 F.2d 741 (D.C. Cir.1974). In fact, as mentioned *infra,* the admissibility of such evidence has yet to be settled in this Circuit. Under these circumstances, it would not be in order to criticize trial counsel for deciding to forego spectrographic examination of the exemplar and the

intercepted conversation. *See DuPree v. United States,* 606 F.2d 829, 831 (8th Cir. 1979), *cert. denied,* 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980). Additionally, the *Moore* standard ordinarily would not require a lawyer to anticipate changes in the law or pursue novel theories of defense. *See Cerbo v. Fauver,* 616 F.2d 714, 718 (3d Cir.) (*Moore* 'stresses the *customary* skill at the time and place of the representation') (emphasis added), *cert. denied,* 449 U.S. 858, 101 S.Ct. 158, 66 L.Ed.2d 73 (1980)."

1. *See People v. Girard,* 96 Mich.App. 594, 293 N.W.2d 639 (1980) setting forth enlightened approach of Michigan requiring that the trial court instruct the jury on the definition of legal insanity before testimony is presented on that issue.

2. Instruction number two states only one of appellant's pleas: "To the information filed by the State the defendant has pleaded not guilty

Considering the circumstances of this case and the testimony adduced, I cannot bring myself to disregard our state statute. Although defendant acted as his own co-counsel, it was not the responsibility of this Vietnam War veteran to solely protect the record and it was surely not his responsibility to conduct the trial. It was the responsibility of his court-appointed counsel to aid him in offering jury instructions and it was the trial judge's duty to instruct on the applicable law of the case and to apprise the jury that this Vietnam War veteran had pleaded "not guilty by reason of mental illness." The Vietnam War veteran was not schooled in the law. Trial procedures and techniques were unfamiliar to him. The record reflects that defendant tried to study law in his prison cell.[3] Defendant could only have "abandoned" his plea of not guilty by reason of mental illness by withdrawing the plea or by failure to produce a mental illness defense. A prosecutor and trial judge cannot unilaterally withdraw a plea or deem it "abandoned." *People v. Morse,* 60 Cal.2d 631, 36 Cal.Rptr. 201, 217, 388 P.2d 33, 49 (1964), holds: "Neither the court nor defense counsel could withdraw from the jury's consideration the question of defendant's innocence without his personal consent." Mental illness goes to his innocence. Even defense counsel is unable to withdraw a plea unless defendant consents on the record to a withdrawal. *State v. Johnston,* 84 Wash.2d 572, 577, 527 P.2d 1310, 1313 (1974), substantiates my theory for it holds that the defendant's choice to enter a plea of mental illness "is his—not that of his attorney—for the constitution gives him the right to appear and defend either in person or by counsel," (quoting *State v. Dodd,* 70 Wash.2d 513, 519–20, 424 P.2d 302, 306 (1967)). *See* U.S. Const. amend. VI, S.D. Const., art. VI, § 7. It grieves fundamental fairness, and therefore grieves the law, to deem a plea "abandoned," where, as particularly reflected in this case, a factual mental illness defense was presented. If a prosecutor, trial judge, and court officers have the power to conceivably cause, in their minds, and transform this into an "abandonment" of a plea, all roads will lead to conviction. The role of the jury will dissipate into legal infinity, and we will have reached the end of the road for this Nation "conceived in liberty," as Abraham Lincoln so eloquently penned on an envelope en route to Gettysburg.

During the trial, defendant produced testimony that he suffered from Vietnam flashback syndrome, also termed posttraumatic stress disorder, a recognized symptom of that war. Under oath, defendant testified he hallucinated and escaped from confinement believing he was running from the Viet Cong. The jury, of course, had a right to believe or disbelieve his story. Inasmuch as the jury did not have the mental illness plea before it, the jury's verdict was perforce impacted against him. From a standpoint of truth, issues in the case, proof, fairness, and recognition of a mental derangement of this combat veteran, the jury might well have found him "not guilty by reason of mental illness." However, defendant's trial counsel failed to insist that the mental illness plea be brought to the attention of the jury. It is important to note defendant's pretrial counsel was present when his two pleas were entered. His trial counsel, nonetheless, knew the mental illness plea existed and permitted the state and the clerk of the court to disregard a state statute. Notwithstanding defendant's plea, the trial judge never instructed the jury on the mental illness defense and failed to submit a verdict form to the jury which would have permitted the jury to find the defendant "not guilty by reason of mental illness." Trial counsel failed to request such a verdict form.

During the trial, defendant testified that when he was walking towards the milk machine in the mess hall of the Penitentia-

---

which plea is a denial of and puts in issue every material fact consituting [sic] the offense charged in the information."

**3.** Preparing written instructions would encompass the use of law books, typewriter, bond paper, carbon paper, typing erasure, and desk. Cells are not equipped with such furniture or supplies.

ry, the inmates were no longer Americans. "It was more of the Vietnamese type thing," he told the jury. He further testified: "[T]hey were all looking at me" and "You [referring to himself] are going to get killed here." Asked by his trial counsel, who had failed to propose a critical instruction on mental illness, "What did you see in your mind as you were leaving the room?", he replied "I was back in Vietnam." Concerning leaving the work farm (escaping), he was asked: "What were your intentions when you left the farm?" His answer: "Get back to the States." After leaving the farm, defendant testified that he went downtown: "[A]nd I went to the big Buddha shrine they have there [actually it was the Cathedral Church in Sioux Falls, South Dakota], and I stayed there for a period of days, and I came out occasionally and when I did, I was still surrounded by Vietnamese so I was still scared." Defendant claims he blacked out for several days and told the jury: "The last thing I remember is crossing a rice patty field and was shot at by somebody, and the next thing I remember is talking to two police officers, one was named Curley, in Wisconsin." The State vigorously cross-examined defendant on this posttraumatic stress disorder or flashback syndrome.[4] The point is: this veteran's mental illness at the time of the commission of the alleged offense was deeply in issue. Evidence having been placed before the jury on defendant's alleged mental illness during the commission of the alleged crime, the trial court was required to instruct on the law concerning this defense.

*State v. Bean,* 265 N.W.2d 886 (S.D.1978). *See also, Jackson v. State,* 149 Ga.App. 253, 253 S.E.2d 874 (1979) (for the premise that a defendant's sworn testimony is sufficient to raise an issue regarding an instruction to a jury); *Commonwealth v. Mattson,* 377 Mass. 638, 387 N.E.2d 546 (1979).

Clearly, there was evidence before the jury which could lead it to believe that defendant was mentally ill. Under the laws of the State of South Dakota, all persons are capable of committing crimes except those belonging to designated classes, among which are persons who, at the time of committing the act charged against them, were mentally ill. An act done by a person in a state of mental illness cannot be punished as a public offense. SDCL 22–3–1(3); SDCL 22–1–2(22). This jury should have been so instructed. It was not. The jury should also have been instructed as to what constitutes mental illness in the State of South Dakota based upon our statutes and decisional law. It was an issue in the case. In South Dakota, mental illness of short duration, referred to in the law as temporary mental illness, is as fully recognized as a defense as is mental illness of longer duration. If, at the time of alleged escape, defendant was temporarily mentally ill, he must be found not guilty by reason of mental illness in South Dakota even if he was sane at earlier or later times or at any earlier or later period. *State v. Graves,* 83 S.D. 600, 163 N.W.2d 542 (1968); South Dakota Pattern Jury Instructions (Criminal) § 2–14–5b. Trial counsel failed to ade-

4. South Dakota is rich in public education, institutions of higher learning, and public libraries. Books on the Vietnam War, and the effects on our American troops are readily found in libraries throughout this state and appreciation of this veteran's claimed mental illness could be found in public libraries in South Dakota. Such books include, but are not limited to, the following: G.I. Guinea Pigs (How the Pentagon Exposed Our Troops to Dangers More Deadly Than War: Agent Orange and Atomic Radiation), distributed by Harper & Row, copyright 1980, by Michael Uhl and Tod Ensign; Spoils of War by Charles J. Levy, Houghton Mifflin Company, Boston, 1974, copyright 1971 by Transaction, Inc.; No Victory Parades (The Return of the Vietnam Veter-

an) by Murray Polner published by Holt Reinhart & Winston, copyright 1971 by Murray Polner; The Discarded Army (Veterans After Vietnam), by Paul Starr, published by Charter House, New York, copyright 1973, by Center for Study of Responsive Law. Any lawyer defending a case where a Vietnam War veteran is claiming mental illness because of flashback syndrome necessarily had to understand something about the mental disorders created by that War. A book is often the key which opens the golden door of knowledge but you have to first unlock the door. An attorney owes a duty to investigate and consider possible defenses. *State v. Walker,* 287 N.W.2d 705 (S.D.1980); *State v. Erickson,* 80 S.D. 639, 129 N.W.2d 712 (1964).

quately and effectively represent defendant by neglecting to request such instructions. Although expert medical testimony is lacking in this case, defendant squarely put into issue his state of mind at the time of the alleged offense.[5] The jury should have been instructed on the burden of proof with respect to not only proving the essential elements of the offense beyond a reasonable doubt, but to prove that defendant was sane at the time he escaped beyond a reasonable doubt. South Dakota Pattern Jury Instructions (Criminal) § 2–14–5e; *State v. Waugh*, 80 S.D. 503, 127 N.W.2d 429 (1964). *See also, State v. Standing Soldier*, 299 N.W.2d 568, 572 (S.D.1980), for the essential holding that the presumption of sanity disappears and the accused's mental capacity to commit the act for which he is charged becomes an essential element to be proven beyond a reasonable doubt where evidence has been introduced pertaining to a defense of mental illness. Again, counsel failed to request such an instruction and the trial court failed to instruct the jury on burden of proof.

Defendant was entitled to adequate and effective assistance of counsel. *State v. Pieschke*, 262 N.W.2d 40 (S.D.1978). Counsel should have pursued, investigated, and made himself aware of the mental problems created in Vietnam War veterans. The right of an accused to the services of an attorney envisages that his attorney will investigate and consider possible defenses. Defense counsel's representation cannot be casual and perfunctory. *State v. McBride*, 296 N.W.2d 551 (S.D.1980). In my opinion, it was.

The psychiatric profession has a desk manual referred to as the diagnostic and statistic manual III. "The manual was first released in unfinished form in early 1980 and was recommended to the American Psychiatric Association for use in diagnosis and treatment in July, 1981. . . . the Veteran's Administration did not recognize posttraumatic stress disorder as a treatable dis-

ease until October, 1980." *State v. Serrato*, 424 So.2d 214, 223 (La.1982). For background information to shed understanding on posttraumatic stress disorder in Vietnam veterans, this author recommends a reading of *State v. Felde,* 422 So.2d 370 (La.1982). Suffice it to say, these veterans uniquely feel great remorse and guilt. Sixty percent of the Vietnam War combat veterans experience posttraumatic distress. "This is because units did not stay together, there was no real war objective, the soldiers were quite young, and drugs were freely available at a low price. Vietnam soldiers averaged 19.2 years, whereas those in World War II and Korea averaged 26½. The units in World War II stayed intact and came home together whereas in Vietnam each veteran came home alone. . . . Twenty-five percent of all men in prison are Vietnam era veterans." *Felde,* 422 So.2d at 377. In my opinion, this prison population percentage is a national disgrace.

The post-conviction hearing judge openly expressed that this case created interesting and intriguing questions of particular import, especially the defense of the Vietnam stress syndrome. The post-conviction judge put it this way:

The second question that I think is intriguing has to do with the matter concerning the Vietnam stress syndrome. I do know that has been recognized by some states as a proper defense. However, our state has repeatedly said that the test for mental illness is a right from wrong test. We don't have the irresistable [sic] impulse test in this state and I think the second question that counsel ought to address themselves to has to do with whether the Vietnam stress syndrome, you know, can somehow be reconciled with our standard and I guess I have my doubts as to whether it can, because it has to do with his conscious level and being able to distinguish right from wrong. That's just what your standard is in South Dakota.

---

5. Defense counsel sought no psychiatric evaluations for his client and made no motions to the trial court to secure expert testimony on his client's behalf. Defendant strongly urged him to do so.

The post-conviction judge refused to recognize, in his entire review of this case, Vietnam stress syndrome as a mental illness factor. Conclusion of Law number 5 states: "The entire record as presented to this court fails to present a sufficient evidentiary basis to support a mental illness defense." With this conclusion, I take exception and would hold that it is clearly erroneous. *Gregory v. State,* 325 N.W.2d 297 (S.D.1982). "A trial court must instruct a jury as warranted by the evidence presented." *State v. Grey Owl,* 295 N.W.2d 748, 750 (S.D.1980). I cannot countenance the courts of this state refusing to recognize the Vietnam stress syndrome as a mental illness, albeit temporarily. The books on the Vietnam War, the American Psychiatric Association, and the United States Veterans Administration recognize it as a form of mental illness. It appears that the reviewing judge's mind was closed to the very defense that permeated the trial.

It is to be noted that in a post-conviction hearing on June 2, 1982, the Minnehaha County Public Defender (third attorney for defendant) stipulated with the state's attorney's office of Minnehaha County that there existed a "medically defined post-traumatic disorder which is in DSM 3, the Diagnostic Manual for mental illness which is widely used and accepted in the mental health field."

Defense counsel testified at the post-conviction hearing concerning the mental illness instruction. He testified:

> I started to bring it up and Judge Patterson interrupted me and said that he was going to do everything in order and the first thing—first order of business was going to be the Instructions as proposed. And we went through all of those, and I guess when it came back, this just wasn't there in my mind any more.

The next question to counsel was as follows: "So no formal offer of the Instruc-

6. A strikingly analogous factual situation is reported in *Harris v. United States,* 30 Crim.L. Rev. 2368, 2369 (D.C.Ct.App.1982). In that case, as in this case, defense counsel had lost his notes and thus was unable to investigate and discover information central to the case.

tion was ever made?" And he testified: "Neither formal or informal." Defense counsel also testified:

> [I] gave my file to Sid Strange and prior to that, I stripped the file and when I moved and changed offices, somehow or other my notes disappeared. I have no idea where my notes are relative to this case. All I remember is John [defendant] and I discussed it and after I got the letter from Dr. Kennelly or the report from Dr. Kennelly, I put insanity out of my mind and it never really came back up again in my mind until towards the end of the trial.[6]

When defense counsel was asked: "Do you have a professional opinion about the relevancy of the mental illness defense at that time?", he responded: "At this time, I felt that there should be Instructions relative to it."

Defendant further testified at the post-conviction hearing that he twice reminded his defense lawyer to request the mental illness instruction. Explaining, he testified:

> So then the morning we're preparing the jury Instructions, they're going through some of the jury Instructions and they take a break and they come out and I told him, I said, look, where is the document on my insanity plea? Where's the Instruction I'm going to have on this? I was sitting in a chair like this. He was sitting over here talking and said, now, look, we've got a lot of good Instructions. I don't know if I want to push him to give me the other Instruction. I told Pokela [his trial counsel], I didn't care about that. I want my insanity. I got up on the stand and I told one side of the story and that jury is sitting there listening, and if they don't have the insanity Instruction, then they're just going to think I'm nuts if they don't have no reason why I spoke the way I did. And he

This constituted ineffective assistance of counsel. *See also, Walker v. Solem,* 648 F.2d 1188, 1189 (8th Cir.1981), for failure of counsel to conduct a necessary investigation into the facts which may result in prejudice.

says we didn't have no expert witnesses. Well, the State asked me what I felt about it. I said, and I told him that I was crazy so what more do you need. If you didn't bring a witness, that's our fault and you messed it up and I want the Instruction. He said, okay. I'll take care of it. He went on in to see the Judge. I thought I'll hear the Instructions and thought it was a normal Instruction.

Defendant further testified at the post-conviction hearing:

The jury got up and left. I asked Pokela where was my insanity Instruction. All of a sudden, everybody looked at everybody and the State got mad and they all ran off to the Judge's chambers and about five minutes later, they had me in there and I was wanting a mistrial because I didn't get—everybody was telling me I was crazy. That's what I was trying to say to begin with and that's about how it went.

The transcript of the criminal jury trial proceedings buttresses defendant's post-conviction testimony. It reveals that defendant expressly told the trial judge in chambers that he had not abandoned his mental illness defense. Mr. Pokela admitted, on the record, during a conference immediately subsequent to the jury receiving the case for deliberation, that his client had pointed out that he wanted a mental illness instruction. Mr. Pokela told the trial judge that he had pointed out the mental illness matter earlier to the trial judge in the morning and that it was "dropped at that point." During this conference, Mr. Pokela answered the judge's unique question about what he had told the judge that morning. Mr. Pokela replied:

As I remember, I walked into your chambers and I think Mr. Schumacher [deputy state's attorney] was there. I said that it had been pointed out to me that Mr. Miller had pled not guilty and not guilty by reason of mental illness. That I thought that perhaps something ought to be done about it. Then, you stated, is it part of the case, and then I don't remember what I said after that. I

may have said, if I remember right, I guess it's my position only to the extent that his testimony regarding his leaving of the penitentiary farm would be mental illness. Then, I guess somehow it kind of disappeared. I don't remember talking about it any more.

Revealingly, the trial court denied a motion for mistrial which was made by defendant and not his attorney. In so ruling, about the dropped instruction on mental illness the trial judge expressed: "But, I believe that there was a mistake made. I don't believe that the mistake, however, is prejudicial to the substantial rights of the accused." Therein, I manifestly disagree with the trial court and the entire manner in which the defense counsel pursued the mental illness defense. The truth of this record is that it glaringly reveals that although mental illness was pleaded as a defense, and mental illness was testified to as a defense, the jury was never once told about his plea or instructed concerning the law of mental illness.

*Rauscher v. State*, 292 N.W.2d 106 (S.D. 1980), holds that only errors of constitutional dimension are reviewable in post-conviction proceedings. This defendant's Constitutional rights were violated in that he obviously did not receive a fair and impartial jury trial and effective assistance of trial counsel. His mental illness defense went to the heart of his case and although the jury deliberated at length on his innocence or guilt, no jury instruction or jury verdict form related to the very central issue of the case. By the prosecutor, trial judge, and his own defense counsel, appellant was stripped of his Sixth Amendment constitutional rights.

The temple of justice avails him not in case at bar. He bears a prison sentence of two and one-half years. This Vietnam War veteran is in need. I would that I could keep him—help him—in his right. Thus, through this dissent, have I defended his cause.

I therefore respectfully dissent as defendant was entitled to post-conviction relief in accordance with SDCL 23A–34–1.