1996 SD 107

**Gary Lynn LOOP, Petitioner
and Appellant,**

v.

**Joe CLASS, Warden of the South Dakota
State Penitentiary, Appellee.**

No. 19079.

Supreme Court of South Dakota.

Considered on Briefs Oct. 17, 1995.

On Reassignment July 11, 1996.

Decided Aug. 28, 1996.

Douglas E. Hoffman of Gibbs, Feyder, Myers, Peters and Hoffman, Sioux Falls, for petitioner and appellant.

Mark Barnett, Attorney General and Frank Geaghan, Assistant Attorney General, Pierre, for appellee.

GILBERTSON, Justice (on reassignment).

[¶ 1] Gary Lynn Loop appeals the habeas court's quashing his application for writ of habeas corpus. Loop alleges he received ineffective assistance of counsel due to the manner in which his attorney directed his examination at trial. Loop further alleges

the trial court erred in instructing the jury. We affirm on the issue of ineffective assistance of counsel, and find that the issue of jury instructions is not appropriate for habeas review.

## FACTS AND PROCEDURE

[¶ 2] The facts underlying this appeal are outlined in *State v. Loop*, 477 N.W.2d 40 (S.D.1991). Loop, having recently met the victim's mother, accompanied the family trick-or-treating on Halloween night, October 31, 1989. Upon returning home, the victim's mother instructed the victim, ten-year-old A.B., and her brother to get ready for bed. Following this, A.B. retrieved a piece of candy from the kitchen and took it into the living room where Loop was seated on the couch. She offered Loop some of the candy and sat on his knee. While holding A.B. on his knee, Loop reached under A.B.'s nightshirt and fondled her breast twice. A.B. went into the kitchen but did not tell her mother about this touching because her mother was talking on the telephone. After Loop left that evening, A.B. told her mother what had occurred. The matter was referred to law enforcement who arrested Loop on the charge of sexual contact with a child. Loop was later indicted and arraigned on this charge and on a Part II Habitual Offender Information. The matter was set for trial.

[¶ 3] Prior to trial, Loop offered several motions in limine. One of these motions was to preclude evidence concerning Loop's two prior felony convictions, one for second degree sexual assault and the other for sexual contact with a child under age fifteen. State argued it would use such evidence for impeachment purposes only if Loop chose to testify. The trial court granted Loop's motion in part, concluding the evidence of the nature of the crimes would be more prejudicial than probative, and therefore, not admissible. The court did however, hold that the existence of the felony convictions could be admitted for impeachment purposes under SDCL 19–14–12, should Loop elect to testify on his own behalf. The court further reserved the right to re-examine the issue of the admissibility of the nature of the offenses depending on the evidence produced at trial.

[¶ 4] At trial after being fully advised of his right to remain silent by the trial court, Loop elected to waive his right and testify on his own behalf. Loop testified on direct examination to the following:

Q: Did you sexually molest A.B. on Halloween?

A: No.

Q: Did you have any intent to touch a ten-year old girl to sexually gratify yourself?

A: A ten-year old wouldn't sexually gratify me. I was going out with her mother. There was no point.

[¶ 5] Following this testimony, the State argued that the defendant had put the issue of his intent before the jury and asked that the State be permitted to question Loop regarding the nature of his prior convictions. The trial court ruled that the defense attorney had, by this questioning of Loop, opened the door on the intent issue, and permitted limited cross-examination by the State concerning the nature of Loop's prior felony convictions.

[¶ 6] Pursuant to this ruling, State elicited the following testimony from Loop on cross-examination:

Q: In fact, you were convicted of attempted second degree sexual assault there in Colorado on July 22, 1980; isn't that true?

A: I pled guilty to that.

DEFENSE COUNSEL: I am going to object to that line of questioning, Your Honor. I think it goes beyond the scope of your prior ruling as well.

THE COURT: Overruled. That's as far as he goes. You have a standing objection to it, counsel.

Q: Did you ever live in Deadwood, South Dakota?

A: Yes.

Q: When did you live there?

A: About mid–1976 to 1979. December 1979, I think, or later, sometime in 1979.

Q: And, in fact, you were found guilty of sexual contact with a minor in Deadwood, South Dakota, on November 13, 1981; isn't that a fact?

A: That's correct.

[¶ 7] At the conclusion of trial, Loop moved to instruct the jury on the use of the prior felony convictions for impeachment purposes only. The trial court rejected Loop's proposed instruction on this issue and instructed the jury that Loop's prior felony convictions could be used as direct evidence of Loop's intent. The jury returned a guilty verdict and Loop was convicted of sexual contact with a child, in violation of SDCL 22–22–7 and of being an habitual offender. We affirmed the conviction on direct appeal. *Loop*, 477 N.W.2d at 43.

[¶ 8] At a habeas corpus proceeding, Loop argued that the above questioning by his attorney constituted ineffective assistance of counsel such that he was not afforded a fair trial guaranteed him by the state and federal constitutions. He also alleged trial court error in instructing the jury that his prior convictions could be used as direct evidence against him in this trial. The habeas court denied Loop's petition. Loop appeals to this Court, raising two issues:

[¶ 9] 1. **Whether Loop was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article VI, § 7 of the South Dakota Constitution?**

[¶ 10] 2. **Whether the trial court erred in instructing the jury that evidence of Loop's prior felony convictions for sexual offenses could be used as direct evidence such that Loop was denied due process of law under the United States Constitution and Article VI, § 2 of the South Dakota Constitution?**

## STANDARD OF REVIEW

[¶ 11] Our scope and standard of review of habeas corpus actions is well-established. We recently noted in *Two Eagle v. Leapley*, 522 N.W.2d 765, 767 (S.D.1994), that:

> Habeas corpus is not a substitute for direct review. Because habeas corpus is a collateral attack upon a final judgment, our scope of review is limited. On habeas review, the petitioner has the initial burden of proof. We review the habeas

court's factual findings under the clearly erroneous standard.

> Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.

> Habeas corpus is available only where the defendant is imprisoned or restrained of his liberty.

*Id.* (citations omitted).

> Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial. This court, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel.

*Aliberti v. Solem*, 428 N.W.2d 638, 640 (S.D. 1988).

## ANALYSIS AND DECISION

[¶ 12] 1. **Ineffective assistance of counsel claim**

[¶ 13] Loop claims his trial counsel committed errors so serious that he was not functioning as "counsel" as guaranteed Loop by the Sixth Amendment to the United States Constitution and by Article VI, § 7 of the South Dakota Constitution.

[¶ 14] This Court has adopted the two-pronged test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), in determining whether a defendant received effective assistance of counsel. Under this test, the burden is on the petitioner to show 1) that counsel's performance was deficient, and 2) that petitioner was prejudiced by the deficient performance. Discussing the first part of the *Strickland* test, we have stated that:

'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. 'Judicial scrutiny of counsel's performance must be highly deferential.' *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. 'Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95 (citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83, 93 (1955)).

*Two Eagle,* 522 N.W.2d at 768 (quoting *Primeaux v. Leapley,* 502 N.W.2d 265, 267 (S.D. 1993)). The second prong of the *Strickland* test concerns prejudice to the petitioner. "Prejudice may be found when there exists a reasonable probability that, but for the unprofessional errors of counsel, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Phyle v. Leapley,* 491 N.W.2d 429, 432 (S.D.1992) (citing *Ashker v. Solem,* 457 N.W.2d 473, 476 (S.D.1990)).

[¶ 15] In 1993, the United States Supreme Court reexamined its analysis in *Strickland* and held that, in reviewing ineffective assistance of counsel claims,

> an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for the counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180, 189 (1993). Therefore, Loop must show that "counsel's errors were so serious as to de-

prive him of a fair trial, a trial whose result is reliable." *Hopfinger v. Leapley,* 511 N.W.2d 845, 847 (S.D.1994) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693).

■ [¶ 16] Loop claims that his attorney's asking the question which opened the door to introducing evidence of his prior felony convictions for sexual offenses was outside the reasonable skill and diligence of a competent trial attorney under similar circumstances. We disagree.

[¶ 17] Upon review of the trial record, it appears trial counsel made a strategic decision when questioning Loop regarding his intent. Trial counsel attempted to deny each element of the charged crime in an effort to rebut the convincing testimony of the victim in this case. In anticipation of Loop's taking the stand to deny these elements, Loop's attorney asked the trial court to canvass his client respecting Loop's constitutional rights. The trial court did so. Loop assured the court he understood the court's rulings up to that point and further understood his testimony could open up other unanticipated areas of inquiry. Loop maintained his desire to testify, stating to the trial court that "[i]t's necessary." Loop further acknowledged his understanding that his right against self-incrimination would be waived when he took the stand to testify.

[¶ 18] While another attorney may not have asked the questions trial counsel posed to Loop, the question asked related to a plausible trial strategy. "[T]he defendant must show more than that the trial strategy of the defense counsel backfired or that another attorney would have prepared and tried the case in a different manner." *Aliberti,* 428 N.W.2d at 640. This Court will not second guess the strategic decisions of trial attorneys. The fact trial counsel misjudged the consequences of his questioning does not rise to the level of ineffective assistance of counsel requiring reversal. *Mitchell v. Class,* 524 N.W.2d 860, 862 (S.D.1994).

[¶ 19] The habeas court found trial counsel's questioning to be "sound trial strategy." In an unusual maneuver, the trial judge was called to testify at the habeas proceeding. While we do not endorse such a procedure

and will withhold judgment on its propriety until it is properly briefed, we note that even the trial judge reflected on defense counsel's dilemma in adopting a suitable strategy, stating that "the young lady was a good witness.... [S]he was a tough witness.... [C]ounsel must have felt that he had to put on some sort of a denial and a denial of specific intent [would] be something that would then raise a credibility question that the jury would have to decide." This finding by the habeas court has not been shown to be clearly erroneous. We therefore must reject Loop's claim of ineffective assistance of counsel and affirm the habeas court on this issue.

### [¶ 20] 2. Jury instruction

■ [¶ 21] This is a review of a habeas proceeding. As such our review is limited in scope to: 1) whether the trial court had jurisdiction of the crime and the person of the defendant; 2) whether the sentence was authorized by law; and 3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights. *St. Cloud v. Leapley*, 521 N.W.2d 118, 121 (S.D. 1994); *Aliberti*, 428 N.W.2d at 640; *Satter v. Solem*, 422 N.W.2d 425, 427 (S.D.1988).

■ [¶ 22] The issue Loop is raising is a simple evidentiary question. Was the evidence admitted for impeachment purposes or as evidence of the defendant's intent? Loop has the burden of proof and must demonstrate that his constitutional rights have been violated. *Anderson v. State*, 373 N.W.2d 438, 442 (S.D.1985), *overruled on other grounds by Loop v. Solem*, 398 N.W.2d 140 (S.D. 1986). He has factually and legally failed to do so.

[¶ 23] It is a rare evidentiary question that rises to the lofty heights of a constitutional violation. Loop fails to cite us to a single case that would support his argument. The habeas petitioner must establish an error which demonstrates a violation of due process. This burden is much greater than that required on direct appeal and is even greater than the showing of plain error on direct appeal. *Mendoza v. Leapley*, 5 F.3d 341, 342 (8th Cir.1993); *Hicks v. Scurr*, 671 F.2d 255, 259 (8th Cir.1982), *cert. denied*, 459 U.S. 968, 103 S.Ct. 295, 74 L.Ed.2d 278 (1982). "The

question ... is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203, 212 (1977) (citations omitted).

> The inquiry is not 'whether the trial court erred in admitting the particular testimony,' but 'whether the admissions resulted in a trial so fundamentally unfair as to deny [the habeas applicant] due process of law. In making this determination we must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration.' To justify the grant of habeas corpus, the error must be 'so "gross" ... "conspicuously prejudicial" ... or otherwise of such magnitude that it fatally infected the trial and failed to afford [the habeas applicant] the fundamental fairness which is the essence of due process.'

*Rainer v. Dep't of Corrections*, 914 F.2d 1067, 1072 (8th Cir.1990) (citations omitted), *cert. denied*, 498 U.S. 1099, 111 S.Ct. 993, 112 L.Ed.2d 1077 (1991).

■ [¶ 24] We need to proceed no further with any due process analysis as we deem this general issue to have been addressed by *Loop*, 477 N.W.2d at 42. The rule is when a petitioner takes a direct appeal, he cannot thereafter, in a post-conviction proceeding, raise any matter of which he was aware at the time of the direct appeal but did not raise. *Miller v. State*, 338 N.W.2d 673, 675 (S.D.1983). "[W]here substantially the same issue was raised on direct appeal as in habeas review, 'the principle of res judicata is applicable to proceedings upon habeas corpus.'" *Scott v. Class*, 532 N.W.2d 399, 402 (S.D.1995) (quoting *Stumes v. Delano*, 508 N.W.2d 366, 370 (S.D.1993)). We therefore reject Loop's claim on this issue.

[¶ 25] We affirm.

[¶ 26] MILLER, C.J., and KONENKAMP, J., and TRANDAHL, Circuit Court Judge, concur.

[¶ 27] SABERS, J., dissents.

[¶ 28] TRANDAHL, Circuit Court Judge, sitting for AMUNDSON, J., disqualified.

SABERS, Justice (dissenting).

[¶ 29] Defense counsel committed ineffective assistance of counsel by asking Loop, "Did you have any intent to touch a ten-year-old girl to sexually gratify yourself?" Either way Loop answered, the door was opened and a conviction was certain.

[¶ 30] If Loop answered yes, he admitted the crime.

[¶ 31] If Loop answered no, the door was open for the State to show that one of Loop's prior felony convictions involved sex with a minor.

[¶ 32] What makes matters worse is the fact that Loop had already answered that he did not sexually molest A.B. on Halloween. There was nothing to gain and everything to lose by asking the sexual gratification question.

[¶ 33] How the habeas court found trial counsel's questioning was "sound trial strategy" is beyond me. We should reverse and remand for a fair trial based on a clear case of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *See Lee v. Solem*, 405 N.W.2d 56, 59 (S.D.1987) (Sabers, J., dissenting).